**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**ANGELA M. UMSTEAD,**
o/b/o **S.D.W.**,

                  **Plaintiff,**                  5:12-cv-1727
                                                                      (GLS)

                            v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                  **Defendant.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Stanley Law Offices | JAYA A. SHURTLIFF, ESQ. |
| 215 Burnet Avenue | |
| Syracuse, NY 13203 | |
| | |
| Law Offices of Kenneth Hiller, PLLC | KENNETH R. HILLER, ESQ. |
| 6000 North Bailey Avenue - Suite 1A | |
| Amherst, NY 14226 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SERGEI ADEN |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe  
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Angela M. Umstead o/b/o S.D.W. challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Umstead's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On December 16, 2009, Umstead filed an application for SSI under the Social Security Act ("the Act") on behalf of her minor son, alleging disability since May 1, 2005. (Tr.[1] at 71, 116-19.) After her application was denied, (*id.* at 72-75), Umstead requested a hearing before an Administrative Law Judge (ALJ), which was held on December 14, 2010, (*id.* at 30-70, 80-82). On March 11, 2011, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 9-29.)

Umstead commenced the present action by filing her complaint on November 21, 2012 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. **Contentions**

Umstead contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 11-19.) Specifically, Umstead argues that the ALJ erred in: (1) concluding that S.D.W.'s impairments do not functionally equal a listed impairment; and (2) assessing Umstead's credibility. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 12 at 5-15.)

### IV. **Facts**

The court adopts the parties' undisputed factual recitations. (Dkt. No. 11 at 2-9; Dkt. No. 12 at 1-2.)

### V. **Standard of Review**

3

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 1383(c)(3) is well established and will not be repeated here. For a full discussion of the standard of review, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008). Similarly, for a full discussion of the three-step analysis used by the Social Security Administration to determine whether individuals under the age of 18 are disabled, the court refers the parties to its previous opinion in *Shatraw ex rel. K.C.Y., III, v. Astrue*, 7:11-cv-13, 2012 WL 589667, at *1 (N.D.N.Y. Feb. 22, 2012).

## VI. Discussion

### A. Functional Equivalence

Umstead argues that the ALJ erred in failing to find that S.D.W. suffers an extreme limitation[2] in one, or marked limitations[3] in two of six functional domains. (Dkt. No. 11 at 11-17); *see* 20 C.F.R. § 416.926a(d).

---

[2] An "extreme" limitation means "more than marked," and represents an impairment which "interferes very seriously with . . . ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations." 20 C.F.R. § 416.926a(e)(3).

[3] A "marked" limitation is one that "interferes seriously" with the claimant's "ability to independently initiate, sustain, or complete activities" within the given domain. 20 C.F.R. § 416.926a(e)(2)(i).

4

The Commissioner contends, and the court agrees, that substantial evidence supports the ALJ's finding that S.D.W.'s impairments do not functionally equal the listings. (Dkt. No. 12 at 5-15.)

1. *Treating Physician Rule*

First, Umstead argues that the ALJ erred in failing to apply the treating physician rule, which requires controlling weight be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); (Dkt. No. 11 at 12-14.) According to Umstead, the opinion of treating physician Mary Jo Dunbar was improperly given "no weight" by the ALJ, without at least re-contacting her to seek additional information. (Dkt. No. 11 at 13-14.)

Here, in August 2010, Dr. Dunbar opined that S.D.W. suffers marked losses in all activities relating to the domains of attending and completing tasks, interacting and relating with others, and caring for self. (Tr. at 279-82.) The ALJ gave "no weight" to Dr. Dunbar's opinion because there are no clinical findings to support it, including her own office notes, which

contain no behavioral commentary, but only medical management notes. (*Id.* at 18); *see* 20 C.F.R. § 416.927(c)(3). The ALJ proceeded in the subsequent functional equivalency analysis to articulate with greater specificity the record evidence supporting a finding of less severe impairment than that posited by Dr. Dunbar in the areas of interacting and relating with others, and caring for self.[4] (Tr. at 21-24); *see* 20 C.F.R. § 416.927(c)(4). Notably, while Dr. Dunbar opined that S.D.W. suffered "marked" limitations in his ability to interact and relate with others and care for himself, (Tr. at 280-81), S.D.W.'s teachers and pediatrics consultant R. Mohanty found far less restrictions in those areas, (*id*. at 160, 162, 216-17, 258-59). Because the ALJ considered the relevant factors and properly explained his reasoning for discounting the weight given to Dr. Dunbar's opinion, his decision to do so was both legally sufficient and supported by substantial evidence.[5] Further, contrary to Umstead's contention, (Dkt. No. 11 at 14), as there were no obvious gaps in the in the record, the ALJ was not required to seek additional information from Dr. Dunbar. *See Rosa v.*

---

[4] The ALJ concluded, however, that S.D.W. suffers a marked limitation in the domain attending and completing tasks, in accordance with Dr. Dunbar's opinion. (Tr. at 18, 20, 280.)

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

*Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). The ALJ had before him Dr. Dunbar's treatment notes, and the remainder of the evidence of record—including S.D.W.'s other treatment records, educational records, and consultative examination results—was sufficient to determine whether S.D.W. was disabled. *See Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010); (*see generally* Tr. at 120-33, 157-64, 194-206, 214-24, 243-94.)

   2.   *Attending and Completing Tasks*

Next, Umstead argues that the ALJ erred in concluding that S.D.W. has only a marked limitation in attending and completing tasks. (Dkt. No. 11 at 14-15.) Specifically, Umstead argues that the ALJ "offers no explanation for his deviation from" the opinion of S.D.W.'s sixth grade teacher, Randy McCullough. (*Id.*) Further, Umstead points to S.D.W.'s "inability to focus in the afternoon," difficulty "staying on task in science," need for frequent reminders to complete his class work and homework, and his "significant disciplinary actions in school," as evidence of an extreme limitation in this domain. (*Id.* at 15.)

The domain "[a]ttending and completing tasks" contemplates a child's ability to focus and maintain attention, "begin, carry through, and finish . . . activities, including the pace at which [the child] perform[s] activities and

7

the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). School-age children should be able to focus "attention in a variety of situations in order to follow directions, remember and organize . . . school materials, and complete classroom and homework assignments." *Id*. § 416.926a(h)(2)(iv). Children of S.D.W.'s age should also "be able to concentrate on details and not make careless mistakes," change "activities or routines without distract[ion,] . . . stay on task and in place when appropriate[,] sustain attention enough to participate in group sports . . . and complete family chores," and "complete a transition task . . . without extra reminders and accommodation." *Id.*

The ALJ found that S.D.W. suffers a marked limitation in this domain. (Tr. at 20.) In making this determination, the ALJ explicitly mentioned the very evidence that Umstead cites in her brief. (*Compare id.*, *with* Dkt. No. 11 at 15.) The ALJ also noted the conflicting opinions of record with regard to this domain. (Tr. at 20.) In particular, Dr. Mohanty opined that S.D.W. suffers a "less than marked" limitation in this domain based on the results of S.D.W.'s consultative examination and his enrollment in a regular education program. (*Id.* at 252-54, 258.) Further, S.D.W.'s fifth grade

teacher[6] reported that S.D.W. suffers only "obvious" and "slight" problems in ten out of thirteen activities related to this domain, and no problems in the remaining three activities. (*Id.* at 159.) S.D.W.'s fifth grade teacher also noted that medication helps S.D.W. concentrate, but in the afternoon he "has less concentration." (*Id.* at 163.) On the other hand, McCullough, S.D.W.'s sixth grade teacher, opined that S.D.W. suffers an extreme loss of ability to function in three out of five activities, and a marked loss in the remaining two activities, related to attending and completing tasks. (*Id.* at 216.) The ALJ gave "great weight" to the opinion of McCullough, and "some weight" to the opinions of Dr. Mohanty and S.D.W.'s fifth grade teacher. (*Id.* at 18.) Importantly, "it is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). Although the ALJ did not adopt McCullough's opinion, he properly synthesized the opinion evidence, evaluated the educational records, examined the clinical findings, and considered Umstead's complaints. (Tr. 17-18, 20.) The ALJ accurately noted S.D.W.'s

---

[6] The Teacher Questionnaire completed by S.D.W.'s fifth grade teacher is not signed and does not indicate the name of his teacher. (Tr. at 157-64.)

significant issues in this domain, and his ultimate conclusion that S.D.W. suffers a marked limitation is supported by substantial evidence and will not be disturbed.  *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, [the court] must decide whether substantial evidence supports *the ALJ's decision*.").

3.  *Caring for Self*

Umstead also argues that the ALJ erred in evaluating S.D.W.'s ability to care for himself.  (Dkt. No. 11 at 15-17.)  In arguing that the ALJ should have found a marked limitation in this domain, Umstead relies on the opinion of Dr. Dunbar, as well as her own testimony and reports to S.D.W.'s treating sources.  (*Id.* at 16-17.)  The court agrees with the Commissioner that the ALJ properly evaluated this domain and his determination is supported by substantial evidence.  (Dkt. No. 12 at 8-10.)

The domain "[c]aring for yourself" contemplates a claimant's ability to "maintain a healthy emotional and physical state."  20 C.F.R. § 416.926a(k).  This includes how well the claimant gets his "physical and emotional wants and needs met in appropriate ways; how [he] cope[s] with stress and changes in [his] environment; and whether [he] take[s] care of

10

[his] own health, possessions, and living area." *Id.* A school-age child "should be independent in most day-to-day activities . . . , although [he] may still need to be reminded sometimes to do these routinely." *Id*. § 416.926a(k)(2)(iv). A child of S.D.W.'s age should also "begin to demonstrate consistent control over [his] behavior, and [he] should be able to avoid behaviors that are unsafe or otherwise not good for [him]." *Id*.

The ALJ found that S.D.W. has less than marked limitation in this domain. (Tr. at 24.) Umstead reported that, although S.D.W. is physically capable of taking care of his personal needs, she must constantly remind him to do so, and he impulsively goes to a friend's house. (*Id.* at 50, 54, 144.) However, Dr. Mohanty and S.D.W.'s fifth grade teacher opined that S.D.W. has no difficulties in this domain, and McCullough opined that S.D.W. has only a "moderate loss" in one area of the domain—his ability to "demonstrate[] consistent control over [his] behavior and avoid[] behaviors that are unsafe." (*Id*. at 162, 217, 259.) Furthermore, as discussed above, the ALJ appropriately discounted Dr. Dunbar's opinion that S.D.W. suffers marked difficulties in this domain. *See supra* Part VI.A.1. Accordingly, while some evidence exists of problems within this domain, the ALJ's conclusion that S.D.W. suffers less than marked limitation in caring for

11

himself is supported by substantial evidence.

## B. <u>Credibility</u>

Finally, according to Umstead, the ALJ's credibility findings "are inaccurate and not made in keeping with the legal standards." (Dkt. No. 11 at 17-19.) The court disagrees.

Once an ALJ determines that the claimant suffers from a "'medically determinable impairment[] that could reasonably be expected to produce' the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183-84 (2d Cir. 2010) (quoting 20 C.F.R. § 404.1529(c)(1), (c)(3)(i)-(vii)). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency, and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage,

effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

In this case, the ALJ found that Umstead was partially credible because the clinical findings, objective medical evidence, and educational records do not fully support her testimony. (Tr. at 17.) Further, the ALJ considered Umstead's failure, at times, to provide S.D.W. his prescribed medications and follow up with recommended treatment. (*Id.*) The ALJ explicitly mentioned consideration of the § 416.929 factors and it is clear from his thorough discussion that his decision is legally sound. (*Id.* at 16); *see Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ("[F]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." (internal quotation marks and citation omitted)).

Umstead argues that the ALJ failed to consider her inability to pay for treatment and the "significant side effects" that S.D.W.'s medication

13

caused. (Dkt. No. 11 at 18); *see* SSR 96-7p, 61 Fed. Reg. at 34,487.[7] It was not legal error for the ALJ to take into account Umstead's failure to obtain or follow prescribed treatment as a factor in assessing the credibility of her testimony regarding the severity of S.D.W.'s symptoms. *See* SSR 96-7p, 61 Fed. Reg. at 34,487. In addition, the mere fact that the ALJ did not mention a particular item of Umstead's testimony does not permit an inference that such evidence was not considered. *See Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d. Cir. 2012). In fact, the ALJ noted Umstead's testimony that she had "difficulties with her insurance company in trying to find a counselor" for S.D.W. (Tr. at 17.) However, treating nurse practitioner Angela Liberatore observed that "[t]here has been no follow through with recommendations for counseling[,] although [Umstead] does say she has called a few places but 'won't go to the place at St. Joes [sic] in Syracuse.'" (*Id.* at 290.) Thus, it is clear that the ALJ considered

---

[7] As the Commissioner points out, (Dkt. No. 12 at 12-13), Umstead mistakenly relies on SSR 82-59, which applies to "individual[s] who would otherwise be found to be under a disability, but who fail[] without justifiable cause to follow treatment prescribed by a treating source which the [Commissioner] determines can be expected to restore the individual's ability to work." 1982 WL 31384, at *1 (1982); (Dkt. No. 11 at 18.) Here, the ALJ did not determine that S.D.W. is under a disability, and merely used Umstead's failure to follow recommended treatment as a factor in assessing her credibility. (Tr. at 17.) Under these circumstances, the ALJ was required to consider any explanations that Umstead offered, or other information in the record, that could explain her failure to seek medical treatment. *See* SSR 96-7p, 61 Fed. Reg. at 34,487.

14

Umstead's explanation for failing to obtain counseling for S.D.W., but ultimately found other evidence more persuasive. (*Id.* at 17.) Further, treatment records show that, in October 2009, Umstead stopped giving S.D.W. his prescription medication after one week, without consulting his treatment provider, because Umstead thought it caused his tics to worsen. (*Id.* at 266.) Liberatore noted that Umstead had not given the medication a fair chance before deeming it ineffective, and restarted S.D.W. on the medication, months later, when Umstead expressed renewed concerns about S.D.W.'s tics and behavior. (*Id.*) Accordingly, the record contains substantial evidence to support the ALJ's determination that S.D.W.'s symptoms were not as severe as Umstead alleged.

## C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Umstead's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 22, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court